UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES LUMAR** | * | **CIVIL ACTION NO. 25-1264** |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| **ALLIED TRUST INSURANCE COMPANY** | * | **MAGISTRATE JUDGE EVA J. DOSSIER** |

\* \* \* \* \* \* \* \*

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant Allied Trust Insurance Company ("Allied Trust:"). R. Doc. 6. Plaintiff James Lumar ("Lumar") did not oppose the motion. Lumar filed a response after the Court ordered him to show cause why this matter should not be dismissed for lack of prosecution. R. Docs. 9, 10. Considering the record, briefing, and applicable law, the Court now rules as follows.

**I.    BACKGROUND**

This case arises from alleged damage to Lumar's home located in Edgard, Louisiana (the "Property"), caused by Hurricane Francine on September 11, 2024. R. Doc. 1-2 at 3–4. At that time, Plaintiff had a homeowners policy issued by Allied Trust covering Plaintiff's Property (the "Policy") that was in full force and effect at the time of Hurricane Francine's landfall. *Id.* at 3. Lumar avers that Allied Trust underestimated the extent of the damage to his home and thus undervalued his claim, and that Allied Trust received satisfactory proof of loss at the time that its independent adjuster conducted an inspection of the Property. *Id.* at 3–4.

Plaintiff retained Copeland Claims Service, a public adjuster, to prepare an estimate of the damages to the Property caused by Hurricane Francine. *Id.* at 4. The estimate approximated $41,615.87 in damages. *Id.* Lumar asserts that he provided this estimate, as well as "objective photographs of the damages" to Allied Trust. *Id.* He furthermore alleges that he made an amicable

1

demand upon Allied Trust "to no avail." *Id.* Plaintiff appears to bring claims for breach of contract pursuant to La. R.S. § 22:1892. *Id.* at 6-7.

Allied Trust removed this matter to this Court on the basis of diversity jurisdiction, arguing that Plaintiff's claims will exceed the amount in controversy if he pursues statutory penalties on top of his other claimed damages. R. Doc. 1. Allied Trust now submits the instant 12(b)(6) motion to dismiss for failure to state a claim. R. Doc. 6.

## II.    PRESENT MOTION

Allied Trust asks this Court to dismiss all of Plaintiff's claims against it. R. Doc. 6. First, Allied Trust argues that Plaintiff did not comply with the "cure period notice" requirement under La. R.S. § 22:1892.2(C), which governs an insured's ability to seek statutory penalties when their insurers fail to tender timely payment in the event of a "catastrophic loss." *Id.* at 9. Plaintiff's failure to comply with the statutory requirements, Allied Trust argues, would require Plaintiff's claims to be dismissed as premature because the statute requires insureds to take certain actions "[a]s a condition precedent to bringing an action pursuant to this Section." *Id.* (quoting La. Rev. Stat. § 22:1892.2(C)(1)). Second, Allied Trust represents that the Policy forecloses Plaintiff's ability to proceed with this action because he did not comply with the "Duties After Loss" portion of the Policy. *Id.* at 10–13. According to Allied Trust, Plaintiff has failed to comply with his duties under the Policy by (1) failing to submit to Allied Trust documentation of the repairs made to the Property after Hurricane Ida so that Allied Trust could differentiate between the damage caused by Ida and the damage caused by Francine; (2) failing to submit proposals, estimates, expenses, invoices, and other relevant documentation pertaining to his losses stemming from Hurricane Francine; and (3) failing to submit a signed and sworn proof of loss. *Id.*

Beyond the statute and policy-specific arguments, Allied Trust also contends that the Petition is generally devoid of well-pleaded facts. *Id.* at 13–14. It submits that the Petition contains nothing but barebones assertions with no factual specificity as to the nature and causation of the damages, information about the public adjuster estimate, or detailed information of Plaintiff's purported compliance with the applicable statutes and Policy terms. *Id.* Allied Trust argues that the Petition does not state a valid claim for breach of contract because there are insufficient facts to alleged that the damages resulted from Hurricane Francine; thus, there are insufficient facts alleged as to whether the damages are even covered under the Policy. *Id.* It also argues that the Petition fails to allege that Allied Trust was untimely in responding to Plaintiff's estimate and demand, and Allied Trust cannot have handled Lumar's claim in bad faith if it is not alleged that Allied Trust was untimely in its claims handling. *Id.*

Plaintiff submitted a response to this Court's show cause order. R. Doc. 10. In it, he argues that he complied with the notice requirements under both the statute and the Policy. *Id.* at 2. Lumar further claims that he pleaded sufficient facts in this Petition to allow his claims to survive the instant motion. *Id.* at 1–2.

### III.    APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference

3

that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Notice of Removal asserts that this Court has diversity jurisdiction over this case. R. Doc. 1 (relying on 28 U.S.C. § 1332). As such, this Court would apply state substantive law to its analysis under Rule 12(b)(6). *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 269 (5th Cir. 2009). "Under Louisiana law, '[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). Moreover, "[t]he words of a contract must be given their generally prevailing meaning." *Id.* at 207 (quoting La. Civ. Code Ann. art. 2047 (1987)). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Id.* (quoting *Cadwallader*, 848 So. 2d at 580). However, as in all cases removed to this Court on the basis of diversity jurisdiction, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

District courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and" is between "citizens of different states." 28 U.S.C. § 1332(a). When both of these conditions are present in state court, any such civil action "may be removed by the defendant . . . to the district court . . .

4

embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). When the Petition does not include a total specific monetary demand, defendants must establish by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "This requirement is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Id.* Crucially, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.*

### IV.    ANALYSIS

Much of Allied Trust's motion to dismiss, as well as its notice of removal, rests on its assumption that Lumar is pursuing statutory penalties against it under La. R.S. § 22:1892.2. R. Docs. 1, 6. Moreover, in Allied Trust's motion to dismiss, it argues that any claims for these statutory penalties will be premature and thus not allowed to move forward. *See* R. Doc. 6. As will be discussed, after careful analysis of the Petition, notice of removal, and motion to dismiss, the Court finds that Lumar has not facially pleaded that he is pursuing bad faith penalties against Allied Trust, and that Allied Trust has not carried its burden to demonstrate that the amount-in-controversy exceeds $75,000. As a result, the Court will remand this case back to state court for lack of diversity jurisdiction because it does not find that Allied Trust has demonstrated by a preponderance of the evidence that Lumar's claims exceed the amount-in-controversy requirement.

5

### A. It Is Not Facially Apparent from the Petition that Plaintiff Is Pursing Penalties or That the Amount in Controversy Requirement is Otherwise Satisfied.

Allied Trust contends in its motion to dismiss that Lumar cannot pursue statutory penalties against it because he did not comply with the pre-suit parameters of the new and arguably applicable statute, La. R.S. § 22:1892.2. It assumes without explanation that Hurricane Francine constitutes a "catastrophic loss" as defined in La. R.S. § 22:1892, and thus any claims for bad faith penalties must comply with the requirements of La. R.S. § 22:1892.2. Thus, because it argues that Lumar has not pleaded that he complied with the statutory requirements of La. R.S. 22:1892.2, Allied Trust wishes for this Court to dismiss any claims for statutory penalties. R. Doc. 6. Allied Trust also relies on the existence and monetary value of the same bad faith penalties claims to make its case that the amount in controversy present at the time of removal exceeded $75,000, exclusive of interest and costs. *See* R. Doc. 1. For the following reasons, the Court finds that Lumar has not stated a claim for bad faith penalties under any statute. Therefore, it is not facially apparent from the Petition that the amount in controversy here exceeds $75,000.

Louisiana recently changed its bad faith penalties laws. After Hurricane Ida in 2021 and before Hurricane Francine in 2024, the Louisiana legislature amended the laws applicable to insurance claims such as the instant case. *See* La. Act 3 of 2024 (SB 323) (effective July 1, 2024). It repealed La. R.S. § 22:1973, revised La. R.S. § 22:1892, and added La. R.S. § 22:1892.2. *Id.* Under the new statutory scheme, insureds who suffered losses as a result of a statutorily defined "catastrophic loss" can bring suit against their insurer pursuant to La. R.S. § 22:1892. But, if they seek to recover statutory penalties against their insurers, La. R.S. § 22:1892 states that claims for penalties in the event of a "catastrophic loss" will be subject to the provisions of La. R.S. § 22:1892.2, whereas all other penalties claims will be governed by La. R.S. § 22:1892.

6

A "catastrophic loss" is defined in La. R.S. § 22:1892(B)(1)(c)(i) to mean "a loss that arose from a natural disaster, windstorm, or significant weather-related event that was a presidentially declared emergency or disaster or a gubernatorially declared emergency or disaster." On September 16, 2024, the President of the United States declared that Hurricane Francine constituted a disaster,[1] and on September 18, 2024, the Governor of Louisiana issued Executive Order Number JML 24-147 declaring a State of Emergency relative to Hurricane Francine.[2] Therefore, if a claimant sues their insurer and seeks statutory penalties for damages sustained as a result of Hurricane Francine, the provisions of La. R.S. § 22:1892.2 appear applicable.

Defendant asks the Court to dismiss Plaintiff's bad faith penalty claims pursuant to Fed. R. Civ. P. 12(b)(6) as premature. R. Doc. 6. Allied Trust categorizes Hurricane Francine as a "catastrophic loss" as defined by La. R.S. § 22:1892 and believes that the Petition states that Plaintiff is seeking statutory penalties for bad faith claims handling. *Id.* Allied Trust contends that Lumar's penalties claims are premature because, due to Hurricane Francine being a "catastrophic loss," Lumar would be required to comply with the sixty-day "cure period notice" contained in La. R.S. § 22:1892.2, and the Petition does not allege that he complied with this statutory requirement. *Id.* Thus, his claims for statutory penalties should be dismissed because Lumar did not plead compliance with La. R.S. § 22:1892.2.

Plaintiff here clearly brings a breach of contract claim against his insurer, Allied Trust, pursuant to La. R.S. § 22:1892. R. Doc. 1-2 at 4. The Petition, however, does not seek statutory penalties. To be clear, the Petition lists one cause of action—breach of contract. R. Doc. 1-2 at 5;

---

[1]   FEMA-4817-DR; *see also* Presidential Declaration of a Major Disaster for the State of Louisiana, 89 Fed. Reg. 79680 (Sept. 30, 2024) (providing notice of the Presidential declaration of a major disaster in FEMA-4817-DR).
[2]   Both declarations are facts that can be judicially noticed pursuant to Fed. R. Evid. 201 because they are not subject to reasonable dispute, are generally known within this Court's territorial jurisdiction, and because the accuracy of the cited sources cannot reasonably be questioned.

7

*cf. Albarado v. State Farm Mut. Auto. Ins. Co.*, No. 91-2036, 1991 WL 165733, at *1 (E.D. La. Aug 20, 1991) (finding that action became removable when plaintiff amended complaint to add a claim of statutory penalties to his already-existent breach of contract claim where the insurance policy's limit was less than the jurisdictional amount). Moreover, the Petition lists the following categories of damages that Lumar seeks to recover:

>  A. Actual costs of repairs and remediation;
>  B. Diminution of the value of the Property;
>  C. Reimbursement for personal repairs of the Property;
>  D. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;
>  E. Additional living expenses;
>  F. Emergency and temporary repair expenses;
>  G. Loss of use;
>  H. Actual, compensatory, and general damages proximately caused by Defendant's breach of duties and breaches of contract;
>  I. Costs of prosecution of this action and judicial interest in all damages from the date of judicial demand until paid; and
>  J. Costs of retaining expert witnesses, including, but not limited to: public adjusters, appraisers, engineers, or other consultants.

R. Doc. 1-2 at 6. Statutory penalties do not appear on this list.[3] *See id.*

Allied Trust's notice of removal lists the following as evidence that the amount-in-controversy exceeds $75,000: (1) that Plaintiff's Petition lists a public adjuster estimate for damages in the amount of $41,615.87 and that it has not tendered any payment to Plaintiff yet, so this total amount remains outstanding; and (2) that Plaintiff seeks additional living expenses, temporary repairs, and other similar damages. R. Doc. 1 at 4–5. Allied Trust argues that overall, "[c]onsidering the various damages sought in this matter for the property loss as well as the amounts sought through claims of improper and bad faith claims practices, the amount in controversy clearly exceeds the $75,000.00 required to exercise diversity jurisdiction." *Id.* at 4.

---

[3] And when assessing the list, the calculation of the amount in controversy is "excusive of interests and costs" so none of those listed damages categories can contribute to the amount in controversy calculation. 28 U.S.C. § 1332(a).

But again, it is not apparent on the face of the Petition that Lumar is asserting a claim for statutory penalties due to Allied Trust's bad faith claims handling. The Court will not construe the Petition to include such a claim. Thus, the Petition fails to state on its face that Lumar's damages will exceed $75,000.

The Court is aware that the Petition contains a vague clause that Lumar is entitled to "all other damages [he] may prove as allowed by law." R. Doc. 1-2 at 6. It is *plausible* that he could pursue penalties in the future under this general reservation. But until Lumar does so, the Court will construe "[a]ny ambiguities . . . against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723. Additionally, the Petition does not assert any other specified amounts that could contribute to this Court's assessment of whether the Petition facially demonstrates that the amount in controversy exceeds $75,000. Thus, the Court will only be able to exercise subject matter jurisdiction over the instant case if Allied Trust demonstrated by a preponderance of the evidence that the statutory threshold is met.

### B. Allied Trust Has Not Established by a Preponderance of the Evidence That the Amount in Controversy Exceeds $75,000.

When a defendant cannot demonstrate that it is facially apparent that the damages sought will rise above $75,000, the defendant must show by a preponderance of the evidence that the claims do cross the jurisdictional threshold. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pleaded. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [$75,000]." *Id.*

Here, Allied Trust has submitted no facts present at the time of removal outside of the Petition that support a finding that Lumar's claims exceed $75,000. Allied Trust could have submitted discovery responses, affidavits, or other summary-judgment type evidence to show that

the other damages sought by Lumar could be aggregated together with the $41,615.87 estimate to exceed $75,000. *See Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 890 (5th Cir. 2014) (explaining that defendants submitted evidence of incidental and consequential damages that the court was able to factor into its amount in controversy analysis).

Additionally, none of the cases cited by Allied Trust in its notice help it establish that the amount in controversy here is met. In each of those cases, there were key factors not present here that allowed those courts to come to their respective conclusions regarding the amounts in controversy. *Albarado*, 1991 WL 165733, at *1 (finding action removable once plaintiff amended petition to include statutory penalties); *Daniels v. Metro. Prop. & Cas. Ins. Co.*, No. 03-1900, 2023 WL 22038371, at *3 (E.D. La. Aug. 25, 2003) (noting that defendants submitted a pre-removal settlement letter from plaintiff's attorney evaluating the claim above $75,000); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254–55 (5th Cir. 1998) (evaluating amount-in-controversy in a declaratory judgment action, where the standards for calculating amounts in controversy are different than in non-declaratory judgment actions and inherently include statutory penalties in the amount in controversy calculation because "the object of the litigation is the policy and the value of the right to be protected is plaintiff's potential liability under that policy" (cleaned up)); *Pardue v. River Thames Ins. Co.*, 651 F. Supp. 143, 144 (M.D. La. 1986) (finding that plaintiff prayed for a statutory penalty, so the court would factor in the *total* potential penalty award that could be awarded to plaintiff, even though plaintiff expressly prayed for damages less than the amount-in-controversy).

Even if this Court were to assume that bad faith penalties should be included in the instant calculation, though Lumar is not explicitly seeking them, Allied Trust has still not demonstrated that the amount in controversy exceeds $75,000. Assuming that Plaintiff is entitled to this

10

penalty—which Allied Trust claims he is not because he did not comply with the cure period notice—then Allied Trust has only demonstrated that Lumar's claim is worth $62,423.81.[4] *See* La. Rev. Stat. § 22:1892.2B(1) ("Failure to comply . . . shall subject the injurer to a penalty . . . of fifty percent of the amount found to be due from the insurer to the insured . . . plus proven economic damages sustained as a result of the breach, or two thousand five hundred dollars, whichever is greater"). As Allied Trust has not submitted facts to support the existence of any other economic damages sustained by Lumar, the Court cannot find any other evidence to support Allied Trust's assertion that the amount in controversy exceeds $75,000.

Allied Trust asserts, without support, that Plaintiff's claims for additional living expenses, temporary repairs, and more will aggregate with the Petition's expressly stated claim of $41,615.87 to meet the amount in controversy requirement. R. Doc. 1 at 4–5. As explained by another court in this district, "[t]he fact that these claims *might* establish that [plaintiff's] claims meet the jurisdictional minimum is not enough to support a finding that these claims *do* establish, by a preponderance of the evidence, that the jurisdictional threshold has been crossed." *Lottinger v. State Farm Fire & Cas. Co.*, No. 13-6193, 2014 WL 4403440, at *9 (E.D. La. Sept. 5, 2014).

## V.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that this case is hereby **REMANDED** back to state court for further proceedings.

New Orleans, Louisiana, this 1st day of October, 2025.

THE HONORABLE ELDON E. FALLON

---

[4] The Court's calculation resulted from the following: $41,615.87 x .50 = $20,807.94 (rounded up) to get the 50% statutory penalty. Then, add the penalty to the estimate: $41,615.87 + $20,807.94 = $62,423.81 (rounded up).